PEOPLE *v.* BANKS.

1. PHYSICIANS AND SURGEONS—PRACTICING WITHOUT LICENSE.
    In a prosecution for practicing medicine without having a certificate of registration and license, as required by 2 Comp. Laws 1915, § 6724 *et seq.*, evidence *held*, sufficient to justify conviction.[1]

2. SAME—EVIDENCE—ACTS IN ANOTHER COUNTY.
    While defendant could not be prosecuted in his home county for illegal acts done in another county, evidence of said acts was admissible as characterizing the business in which he was engaged in his home county.[2]

[1]Physicians and Surgeons, 30 Cyc. p. 1568; [2]Id., 30 Cyc. p. 1567; 42 L. R. A. (N. S.) 768.

3. SAME—EVIDENCE—ANALYSIS OF MEDICINE ADMISSIBLE.

  Testimony of the chemist who analyzed some of the medicine furnished by defendant to his patients was admissible to establish the fact that he furnished drugs to effect a cure.[3]

4. CRIMINAL LAW—EVIDENCE—CURING ERROR.

  In a prosecution for practicing medicine without having a certificate of registration and license, as required by 2 Comp. Laws 1915, § 6724 *et seq.*, error, if any, in admitting in evidence a photograph of a patient before taking defendant's medicine without showing that the changed condition of his face on the trial was due to the effect of the medicine, was cured by an instruction to the jury not to be affected by the patient's changed appearance.[4]

Exceptions before judgment from Ingham; Collingwood (Charles B.), J.     Submitted June 17, 1926. (Docket No. 128.)     Decided July 22, 1926.

Frank S. Banks was convicted of illegally practicing medicine.    Affirmed.

*Smith, Hunter & Spaulding,* for appellant.

SHARPE, J.    Defendant reviews his conviction on exceptions before sentence on a charge of practicing medicine without having a certificate of registration and license, as required by Act No. 237, Pub. Acts 1899, as amended, being sections 6724 *et seq.*, 2 Comp. Laws 1915.    The relevant sections of the statute appear in the margin.[1]

---

[3]Physicians and Surgeons, 30 Cyc. p. 1567; [4]Criminal Law, 17 C. J. § 3668.

[1]"(6730)   SEC. 7. Any person who shall practice medicine or surgery in this State, or who shall advertise in any form or hold himself or herself out to the public as being able to treat, cure or alleviate human ailments or diseases, and who is not the lawful possessor of a certificate of registration or license issued under and pursuant to act number two hundred thirty-seven of the Public Acts of eighteen hundred ninety-nine, or acts amendatory thereto, or without first complying with the

No claim is made that the information does not charge an offense under the statute. The exceptions relate to:

"(1) Whether or not the acts proved make out the offense of practicing medicine without a license.

"(2) Failure to instruct the jury as to acts performed outside the venue.

"(3) Prejudicial error in the admission of evidence."

1. The proofs disclose that defendant lived in a home on Shiawassee street in the city of Lansing; that there was a large sign in front of his house, on which was painted the word "Banks;" that in his house was a room designated by sign "Waiting Room," from which a door led into another room, designated "Office;" that in this room the defendant conferred with people who called upon him, and in it were a number of little tables with bottles, similar to bottles of medicine, and others which he said contained growths removed from "patients he had cured."

Roy French and his brother Elno went to the defendant's office in May, 1924. Roy told the defendant that he was suffering with "tuberculosis of the bone;" that he had had an operation on his hip and that there was a hole in it. The defendant told them he "could cure that." He said "that his medicine would soak down into them holes in that bone and drive the poison out of his system;" that—

provisions of this act, except as heretofore provided in section three of this act, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not more than two hundred dollars, or by imprisonment in the county jail for a period of not more than six months, or by both such fine and imprisonment, in the discretion of the court, for each offense. It shall be the duty of the prosecuting attorneys of the counties of this State to prosecute violations of the provisions of this act.

"(6731) SEC. 8. This act shall not apply to the commissioned surgeons of the United States army, navy or marine hospital

"patients that he got was mostly people that had been to doctors and the doctors could not cure him    *    *    * so he got lots of patients that way."

Roy purchased from him a bottle which the defendant said was "cancer medicine," for which he paid him $25.    An analysis showed it contained in part zinc sulphate and hydrochloric acid.    The defendant also sold him a bottle of what was called "Five in one," and another called the "New Discovery," and some "Stump Puller Salve."    He paid $28 in all.    Roy testified:

"He said that the medicine only had to be used once, and he said that in my case I could inject in the discharge place, in my hip, and then afterwards, shortly afterwards, if there were any other infections in my body, that the skin over it would turn colored.    And then to keep those places wet from six to eight hours with the cancer medicine, the same liquid that he told me to inject in the discharge place; to then wet two hours and put on a patch of Stump Puller salve, those were all the directions for the medicines he gave me at that time.    He said it was best to have them written and that he didn't have them written but that he would send them right away.    I gave him ten cents to have it registered.    I received the envelope marked Exhibit 3 and Exhibit 4 which consists of three sheets and I identify them as having come in that envelope."

About three weeks later, Elno again visited the defendant.    He testified:

service, in actual performance of their official duties, nor to regularly licensed physicians and surgeons from out of this State, in actual consultation with physicians and surgeons of this State, nor to dentists in the legitimate practice of their profession, nor to temporary assistance in cases of emergency, nor to the domestic administration of family remedies, nor to osteopaths practicing under the provisions of act number one hundred sixty-two of the Public Acts of nineteen hundred three, nor to optometrists registered under act number seventy-one of the Public Acts of nineteen hundred nine, nor to chiropodists who confine their practice to chiropody and who do not use title

"I told Banks that Roy had used the medicine just as directions called, that he had sent out through the mail and that the face had all swollen out and his knee had swollen out and I told him how it was. I told him that his knee broke out, first he got red spots on his knee, was the first place broke out and he applied the cancer medicine on there from six to eight hours and it kept swelling bigger and bigger and the swelling finally got big enough so there was bunches come out into the leg like boils. And shortly after that, before I had come to Mr. Banks to tell him about it his face had all turned a different color and his face swelled out, it was awful black, and here in front so you could not see his nose, in front by looking in the front part of his face it swelled out so much on his sides that you could not see his ears and he was in awful bad shape. That is what I told Mr. Banks. I told him that his face was awful black and he was in a very serious condition and I would like to have him come out there and see my brother. And he said that the poison come to the surface, and that he was glad that it come to the surface because he was confident of curing him then. Mr. Banks said he would go out there and see him next morning, if I would pay him $5.00 for gas and cylinder oil he claimed. I paid him $5.00 and he went out there next morning. I don't know what happened when Mr. Banks went out to where Roy was."

He at that time got two more boxes of the salve, for which he paid the defendant $4. The defendant made two trips to Roy's home near Laingsburg. He there expressed his satisfaction with Roy's condition and showed them how "to steam the face better," and how to apply the salve.

---

of 'doctor' or 'professor' or any of their abbreviations, or any other prefix or affix in a medical sense to their names, nor to persons who confine their ministrations to the sick or afflicted to prayer and without the use of material remedies.

"(6732) SEC. 9. Any person who shall append the letters 'M. D.' or 'M. B.' or other letters in a medical sense, or shall prefix the title 'doctor' or its abbreviation, or any sign or appellation in a medical sense, to his or her name, it shall be *prima facie* evidence of practicing medicine within the meaning of this

It is insisted by defendant's counsel that he made no diagnosis of the trouble with which Roy was afflicted; that the selling of medicine to him was not engaging in the practice of medicine within the inhibition of the statute.     There is no evidence that the defendant called himself a doctor or held himself out to the public as such.     It is true, also, that he made no examination of Roy.     He simply took his word for the nature of his affliction.     But he did undertake to treat the ailment with which he was suffering, and sold him medicine and sent him by mail specific instructions as to the manner in which his remedies should be applied. Many doctors at times prescribe medicines for patients, relying on their statements as to the nature of their ailments and without making a diagnosis thereof. The charge for the bottle of medicine was out of proportion to its value as such.     It is apparent that it included a fee to the defendant for the service rendered by him in prescribing it.

The language employed in section 8, defining the term "practice of medicine," must be considered in the light of the exceptions stated in section 7.     We are not called upon to state the particular acts which will constitute a violation of the statute.     That which defendant did warranted the submission of the case to the jury and justified the verdict rendered.     The proofs are quite as convincing as those submitted in *People* v. *Kenyon*, 201 Mich. 647.     See, also, *Locke* v. *Ionia Circuit Judge*, 184 Mich. 535, wherein the provisions of this statute were considered, and *Janssen*

---

act.     In this act, unless otherwise provided, the term 'practice of medicine' shall mean the actual diagnosing, curing or relieving in any degree, or professing or attempting to diagnose, treat, cure or relieve any human disease, ailment, defect, or complaint, whether of physical or mental origin, by attendance or by advice, or by prescribing or furnishing any drug, medicine, appliance, manipulation or method, or by any therapeutic agent whatsoever."

v. *Mulder*, 232 Mich. 183, wherein a somewhat analogous question was presented.

2. While the defendant could not be prosecuted in Ingham county for that which he did while at Roy's home in another county, we think this evidence was admissible as characterizing the business in which he was engaged in Lansing. Its tendency was to prove that he was not simply selling medicines, but professed to treat and cure human ailments.

3. The testimony of the chemist who analyzed some of the medicine called "Cancer Cure" was admissible. It established the fact that defendant furnished drugs to the young man to effect a cure of his ailment.

A photograph of Roy before taking the medicine was received in evidence over defendant's objection. The prosecution having failed to show that the condition of his face on the trial was due to the effect of the medicine, the court instructed the jury that they—

"must be careful not to permit yourselves to be affected in any degree whatever because of Mr. French's changed appearance."

The testimony discloses that Roy's changed appearance was described to the defendant by his brother and that he said, in effect, that it was just as he expected it would be. We think the jury would have had a right to infer from the proofs that it was due to the effect of the medicine. But if there was error in admitting the photograph, it was cured by the explicit direction of the court to the jury that they must disregard it.

The conviction is affirmed. The trial court will proceed to sentence.

BIRD, C. J., and SNOW, STEERE, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.

WIEST, J. (*concurring*). I concur, understanding

that we adhere to what was said in *Locke* v. *Ionia Circuit Judge,* 184 Mich. 535, relative to gratuitous and humane acts of relief and kindness to the suffering.    All persons may still, through humanitarian, as distinguished from professional impulse, in back-stoop talkativeness, front-porch conversation and elsewhere, tell of cures and remedies and think and speak of a specific for an ailment without becoming criminals by virtue of this law.    This statute does not interdict the spirit of the "Good Samaritan;" neither does it outlaw "Mothers in Israel" or others, whose unselfish ministrations in a humanitarian sense, and not as professionals serving for a fee, alleviate pain and help hurts.

SNOW, CLARK, and McDONALD, JJ., concurred with WIEST, J.