## POWERS v. UNITED STATES.

### No. 7915.

United States Court of Appeals for the District of Columbia.

Decided April 27, 1942.

Mr. Rowland Edwards, with whom Messrs. S. Preston Smith and William J. Sweeney, all of Washington, D. C., were on the brief, for appellant.

Mr. Dennis McCarthy, Assistant United States Attorney, with whom Messrs. Edward M. Curran, United States Attorney, and Charles B. Murray, Assistant United States Attorney, all of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

MILLER, Associate Justice.

Appellant was prosecuted in the Police Court of the District of Columbia upon an information which charged, in part, that he "did then and there unlawfully practise the healing art, by him, the said William Nathan Powers, examining, treating, and prescribing for one Mamie L. Murphy, without having first obtained a license so to do from the Commission on Licensure for the District of Columbia against the form of the statute in such case made and provided, * *." On this appeal two questions are raised, first, as to the sufficiency of the information to charge an offense and, second, as to the sufficiency of the evidence to support the determination of the trial court that the appellant was guilty as charged.

The information followed the language of the District of Columbia Code,[1] which proscribes the offense in the terms set out in the margin. The preceding section of the Code [2] defines the term "the healing art" and the term "to practice."[3] Appellant's contention is that the information is insufficient because it does not include the definition of "practice," namely, because it fails to allege that appellant practiced "for a fee, gift or reward, or in anticipation of a fee, gift or reward, whether tangible or intangible."

---

[1] (1940) § 2—102: "No person shall practice the healing art in the District of Columbia who is not (a) licensed so to do, or (b) if exempted from licensure un-

der sections 2—133 or 2—134, then duly registered."

[2] D.C.Code (1940) § 2—101.

[3] D.C.Code (1940) § 2—101 (c): " 'To

■■ This court has, on several occasions, stated the rule to be that the degree of particularity required in the averments of an information is that which is necessary to enable the accused to understand the nature of the charge against him, intelligently to meet it, and to plead the result, whether conviction or acquittal, as his protection against another prosecution for the same offense.[4] In some of the cases it is said that the averments must be sufficient to inform the court of the facts alleged so that it may decide whether they are sufficient in law to support a conviction, and that the offense may judicially appear to the court when it pronounces judgment.[5] We are satisfied that in the present case the information conforms to the rule and that the allegation in the language of the statute was sufficient for all purposes.[6]

We are satisfied, also, that the evidence was sufficient to prove the accusation contained in the information. Appellant is the manufacturer of a patent medicine called "asthmanol." He has manufactured this asthma remedy for a number of years and sold it at a price of $10 per bottle. Testifying in his own behalf, appellant stated that he had sold asthmanol for the past eighteen years and no one had ever complained of ill-effects from it but, on the contrary, many asthma sufferers who had used it had benefited; that in connection with the taking of asthmanol it is desirable for the person to keep the stomach and bowels as free as possible from excess gas and waste material; that he instructed persons using asthmanol as to the necessity of keeping the bowels loose;[7] that when persons were suffering acutely from asthma and needed to be taken care of he had provision in his home to take care of them; that Mrs. Murphy came to his home on the recommendation of a Dr. Butz; that he called in a Dr. Dull to examine Mrs. Murphy; that Dr. Dull told appellant Mrs. Murphy had bronchial asthma and to go ahead and give her asthmanol and a regular asthma diet; also to give her two types of pills, one a laxative, and the other bicarbonate of soda to sweeten the stomach.[8] Dr. Dull and Dr. Butz testified on behalf of appellant; the former to the effect that he diagnosed Mrs. Murphy's condition as bronchial asthma; that in his opinion the acts done by appellant amounted to nothing more than ordinary nursing services and did not constitute the practice of medicine. Dr. Butz testified that he knew Mrs. Murphy; that she was a former patient of his; that he told Mrs. Murphy about appellant and gave her appellant's address, but Mrs. Murphy had gone to appellant's house of her own volition. He, too, testified that in his opinion the things done by appellant were only the usual functions of a nurse and that it was going too far to say that appellant was practising medicine in the ordinary sense of that term. Mrs. Murphy testified that she went to appellant's home in Washington, D. C. She told him about her attacks of asthma, and also said she had heart trouble. Appellant felt her pulse and put his head down to listen to her heart. He gave her some little pink pills and she arranged with him to return to his home the next week and to stay for a period of three weeks for treatments. Appellant told Mrs. Murphy that he would cure her and that the price would be $100.[9] Mrs. Murphy returned at the appointed

practice' means to do or to attempt to do, or to hold oneself out or to allow oneself to be held out as ready to do, any act enumerated in subsection (b) of this section as constituting a part of the healing art, for a fee, gift, or reward, or in anticipation of any fee, gift, or reward, whether tangible or intangible."

[4] United States v. American Medical Association, 72 App.D.C. 12, 24, 110 F. 2d 703, 715.

[5] United States v. Henderson, 73 App. D.C. 369, 372, 121 F.2d 75, 78.

[6] See Ledbetter v. United States, 170 U. S. 606, 609, 610, 18 S.Ct. 774, 42 L.Ed. 1162; Leonard v. United States, 6 Cir., 18 F.2d 208, 211, 212; Taran v. United States, 8 Cir., 88 F.2d 54, 56; Blalock v. State, 112 Ga. 338, 37 S.E. 361; Maine v. Casey, 45 Me. 435, 436, 437.

[7] In Iowa v. Wilhite, 132 Iowa 226, 229, 109 N.W. 730, 731, 11 Ann.Cas. 180, it was held that under a statute defining practice of medicine as including public profession to cure or heal, one who proposed to cure disease "by methodical rest and dietetics" was engaged in the practice of medicine.

[8] In Gouy Shong v. Chew Shee, 254 Mass. 366, 369, 150 N.E. 225, 227, it was held that the prescription and sale of herbs to cure disease is the practice of medicine and is not rendered legal by interposition of a licensed practitioner's diagnosis.

[9] In People v. Banks, 236 Mich. 8, 13, 209 N.W. 935, 936, it was held, under a statute defining practice of medicine as attempting to, or to cure or relieve disease by prescription, advice, attendance,

time. Appellant gave her more pills, which she swallowed at his direction. She was then put to bed in the rear bedroom, which was also occupied by other patients. She was put on a diet by appellant, who brought food to her, administered pills and the liquid medicine called asthmanol at different times when he thought necessary. She was also given an enema, a few times, by an assistant of appellant. Some of the pills administered by appellant contained pure salts, cascara and capsicum, and others contained bicarbonate of soda. The asthmanol consisted largely of whiskey, and contained also a small amount of gentian. Mrs. Murphy and the other patients all called the appellant "doctor." It is conceded that he did not have a license to practice the healing art in the District of Columbia.

Appellant contends that the statute [10] excludes from practice of the healing art the manufacture and sale of medicines as well as "nursing as defined in chapter 4 of this title"; that everything done by appellant beyond the selling of his medicine constituted no more than nursing. He contends, further, that the law expressly exempts [11] the use of ordinary hygienic, dietetic or domestic remedies, and that the remedies which he applied in this case were domestic remedies. It will be noted, however, that Section 2—134 (c), upon which appellant relies, contains the express limitation: "Provided, That such use [of ordinary hygienic, dietetic, or domestic remedies] is not in violation of the provisions of sections 2—101 and 2—102." Section 2—102 is the one under which appellant was convicted.

■■ It is true that people frequently administer remedies to themselves in their own homes; it is true that nurses, acting under the instruction of doctors, sometimes perform duties which doctors themselves would otherwise perform and which, otherwise, would come clearly within the scope of the practice of medicine. But neither people in the privacy of their own homes, nor nurses acting under the instruction of physicians, represent to persons who are otherwise strangers to them, that they will cure them of afflictions for a price specified, as was done in this case. We are required to look at all the actions of appellant as they appear in the record, and to conclude therefrom whether the evidence was sufficient to support the determination of the trial court. [12] The record in the present case reveals that appellant's activities brought him clearly within the proscription of the statute. It will be noted in this connection that the definition of "the healing art" which is set out in the District of Columbia Code, [13] is made up of a series of clauses connected by the disjunctive "or." Presumably proof of any one would be sufficient to establish the practice which is contemplated by the statute. [14] That appellant did in the present case at least attempt "to prevent, relieve, correct, or cure any disease" cannot be seriously questioned.

Affirmed.

method or any therapeutic agent, that one was engaged in the practice of medicine who sold medicine with instructions for its use without engaging in diagnosis, where the fee charged was out of proportion to the value of the medicine and obviously included a fee for the services.

[10] D.C.Code (1940) §§ 2—101 (b) (5), 2—134 (e).

[11] D.C.Code (1940) § 2—134 (c).

[12] Abrams v. United States, 250 U.S. 616, 619, 40 S.Ct. 17, 63 L.Ed. 1173.

[13] (1940) § 2—101 (b): "'The healing art' means the art of detecting or attempting to detect the presence of any disease; of determining or attempting to determine the nature and state of any disease, if present; of preventing, relieving, correcting, or curing, or of attempting to prevent, relieve, correct, or cure any disease; of safeguarding or attempting to safeguard the life of any woman and infant through pregnancy and parturition; and of doing or attempting to do any of the acts enumerated above: * *."

[14] Smith v. United States, 5 Cir., 288 F. 44, 46.