**Herman August BLOHM, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 1598.**

Municipal Court of Appeals for the District of Columbia.

Argued Feb. 21, 1955.

Decided March 30, 1955.

Joseph J. Lyman, Washington, D. C., for appellant.

Hubert B. Pair, Asst. Corp. Counsel, Washington, D. C., with whom Vernon E. West, Corp. Counsel, Chester H. Gray, Principal Asst. Corp. Counsel, and Harry L. Walker, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

4. Potts v. Catterton, D.C.Mun.App., 82 A.2d 133, 134.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

On this appeal, from a conviction of practicing optometry without a license, our first task is to consider the Government's motion to dismiss. In that motion the contention is made that "the judgment appealed from is non-existent"; that although the trial judge had orally pronounced sentence upon the defendant, he later revoked that sentence, and suspending the imposition of a new sentence, placed defendant on probation; and that by accepting probation defendant waived his right of appeal. It is true that the District of Columbia Probation Act, Code 1951, § 24-101 et seq., unlike the Federal act, provides that no defendant shall be placed on probation except with his consent. Nevertheless, there is no escaping the broad holding of the Supreme Court in Korematsu v. United States, 319 U.S. 432, 63 S.Ct. 1124, 87 L.Ed. 1497, that a defendant who has been convicted and placed on probation, being subject to surveillance and discipline and the terms and conditions imposed upon him, still retains his right of appeal whether probation follows the actual imposition of sentence or (as happened here) suspension of imposition of sentence. It follows that this appeal is not subject to dismissal.

Turning to the merits, we consider the first claim of error which is that defendant was entitled to a dismissal because of lack of clarity in the statute (which we set out in the margin).[1] " 'The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it * * "apprises the defendant of what he must be prepared to meet" ' ". United States v. Debrow, 346 U.S. 374, 74 S.Ct. 113, 114, 98 L.Ed. 92, and cases cited therein; Young v. United States, D.C.Cir., 212 F.2d 236, certiorari denied 347 U.S. 1015, 74 S.Ct. 870, 98 L.Ed. 1137; Goodall v. United States, 86 U.S.App.D.C. 148, 180 F.2d 397, 17 A.L.R.2d 1070, certiorari denied 339 U.S. 987, 70 S.Ct. 1009, 94 L.Ed. 1389. We have no doubt that the statute was clear in its proscriptions and that in following the statutory phraseology the information sufficiently informed defendant of the charge he was called upon to defend.[2]

The next question is whether defendant was entitled to an acquittal as a matter of law. It is admitted that defendant had no license to practice optometry; hence the question is whether he performed any of the acts prohibited by the statute. The Government produced three police officers, each of whom had gone to defendant's office on separate occasions for the announced purpose of obtaining eyeglasses. Their testimony, which was along the same general lines, was that after a preliminary conversation defendant had them sit at a table; that an instrument known as a try-frame was placed over their eyes; that various lenses were inserted into the frame; that defendant told them to read from a chart and continued to insert lenses into the frame until the officers announced they could read the letters on the chart; that defendant made notations on paper of certain figures which were then transmitted by phone to a Dr. Jarman, a licensed physician; that the witnesses were given one of defendant's cards and directed to go to the

---

1. "It shall be unlawful for any person in the District of Columbia to engage in the practice of optometry or represent himself to be a practitioner of optometry, or attempt to determine by an examination of the eyes the kind of eyeglasses required by any person, or represent himself to be a licensed optometrist when not so licensed, or to represent himself as capable of examining the eyes of any person for the purpose of fitting glasses * * * unless he shall have fulfilled the requirements and complied with the conditions of this chapter and shall have obtained a license from the District of Columbia Board of Optometry * * *." D.C.Code 1951, § 2-502.

2. Ledbetter v. United States, 170 U.S. 606, 18 S.Ct. 774, 42 L.Ed. 1162; Powers v. United States, 75 U.S.App.D.C. 371, 128 F.2d 300, certiorari denied 316 U.S. 693, 62 S.Ct. 1300, 86 L.Ed. 1764; United States v. Henderson, 73 App.D.C. 369, 121 F.2d 75.

office of Dr. Jarman; that the doctor, after having them read from a chart, then in at least one instance wrote on a prescription blank the same numbers transmitted by defendant over the phone. Subsequent to these procedures two of the witnesses received eyeglasses from defendant. The third officer made the arrest.

Defendant denied having examined the eyes of any of the three witnesses, and said he merely formed an opinion from such procedures and that the lenses were made up from prescriptions written by Dr. Jarman.

█ We rule that defendant was not entitled to an acquittal as a matter of law. The statute sets forth the prohibited acts in the disjunctive, and there was ample evidence from which the jury could have found that defendant did engage in the practice of optometry or represent himself as an optometrist, or did attempt to determine by eye examination the kind of glasses required, or did represent himself to be a licensed optometrist, or as capable of examining eyes for the purpose of fitting glasses.[3] In view of the alternative and disjunctive language of the statute and in view of Code 1951, § 2–501, which sets forth the definition of optometry,[4] the trial judge would have had no right to order an acquittal or to rule as a matter of law that it was Dr. Jarman and not the defendant who made the actual examinations.[5]

█ The last question is whether the jury was properly instructed. The trial judge explained that the information was not evidence but merely a written charge, that defendant was presumed to be innocent, that the burden rested on the prosecution to prove its case beyond a reasonable doubt, and defined reasonable doubt. After reading the applicable statute to the jury the judge explained the two categories of the defense and told them that if they had a reasonable doubt as to either contention they must acquit the defendant.

We are asked to rule that the charge was vague and misleading, and did not sufficiently discuss the defendant's theory of the case. It may well be that the charge was not as full and comprehensive as it might have been, and that a more thorough discussion of the subject would have been of greater help to the jury. But we cannot say that it was so incomplete as to be erroneous. It did meet the test recently expressed in these words: " 'Even in criminal cases * * * where the law governing a case is expressed in a statute the court in its charge should use the language of the statute.' " Maynard v. United States, D.C. Cir., 215 F.2d 336, 339, citing Terminal R. Ass'n of St. Louis v. Howell, 8 Cir., 165 F.2d 135, and other cases; Norfolk & W. Ry. Co. v. Trautwein, 6 Cir., 111 F.2d 923. In our view the language of the statute was not so vague, cryptic or technical as to confuse the jury or require fuller interpretation by the judge. Moreover, defendant had an opportunity to present instructions embodying his theory of the case and did tender three instructions. These were incorrect in whole or in part, and the trial judge had no obligation to revise or correct them. We also note that at the end of the charge the only criticism offered by the defense was that it was too general and should be made more specific. We are satisfied that the charge as a whole was free of error.

Affirmed.

3. See Powers v. United States, supra; Smith v. United States, 5 Cir., 288 F. 44; see also Gaston v. United States, 79 U.S. App.D.C. 37, 143 F.2d 10, certiorari denied 322 U.S. 764, 64 S.Ct. 1286, 88 L.Ed. 1591.

4. "The practice of optometry is defined to be the application of optical principles through technical methods and devices in the examination of the human eye for the purpose of determining visual defects, and the adaptation of lenses for the aid and relief thereof."

5. See Ritholz v. Commonwealth, 184 Va. 339, 35 S.E.2d 210.