[PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 23-11526

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CLEVON WEBSTER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cr-20172-DPG-1

_____

Before WILLIAM PRYOR, Chief Judge, and JORDAN and MARCUS, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether a criminal information filed without a waiver of indictment is "instituted" and tolls the statute of limitations for an indictment obtained more than five years after the charged offenses allegedly were committed. *See* 18 U.S.C. § 3282(a). The Southern District of Florida suspended grand juries from March 2020 until November 2020 because of the coronavirus pandemic. Unable to bring an indictment against Clevon Webster, the government filed an information against him before the five-year statute of limitations expired in June 2020. But the government's failure to obtain the waiver of indictment required by the Fifth Amendment and Federal Rule of Criminal Procedure 7(b) left it unable to proceed with Webster's prosecution. After grand jury sessions resumed, the government obtained an indictment against Webster. The district court denied Webster's motion to dismiss his indictment as untimely. Because filing the information tolled the limitations period under section 3282(a) and the later indictment related back to the date of filing the information, we affirm.

## I. BACKGROUND

Clevon Webster and his brother used stolen social security numbers to apply for government benefits from September 2014 until June 2015. The five-year statute of limitations allowed the government to bring charges against Webster until June 3, 2020. *See*

18 U.S.C. § 3282(a). But the Southern District of Florida suspended grand jury sessions from March 2020 until November 2020 because of the coronavirus pandemic. *See* S.D. Fla. Admin. Ord. 2020-22 (suspending all grand juries as of March 26, 2020); S.D. Fla. Admin. Ord. 2020-76 (resuming two grand jury sessions per week on November 16, 2020). So the government could not obtain an indictment against Webster.

Instead, the government filed an information against Webster on May 26, 2020. The information alleged that Webster conspired to commit access device fraud with his brother, 18 U.S.C. § 1029(b)(2); possessed 15 or more unauthorized access devices, *id.* § 1029(a)(3); and committed three counts of aggravated identity theft, *id.* § 1028A(a)(1). The government publicly filed the information but did not serve Webster with it. The district court transferred the case to fugitive status until Webster and his brother were apprehended.

Because the offenses charged in Webster's information were felonies and he did not waive indictment, the Fifth Amendment and Federal Rule of Criminal Procedure 7(b) prohibited the government from proceeding with Webster's prosecution by information. So the government sought an indictment against Webster after grand juries resumed in the Southern District of Florida. On January 21, 2021, a grand jury indicted Webster for the same offenses charged in the May 2020 information.

Webster moved to dismiss the indictment as untimely. He did not dispute that the government filed the information within

the five-year statute of limitations. But he argued that filing an information without a waiver of indictment is not enough to toll the statute of limitations. Because the government did not obtain a waiver of indictment and could not proceed with a prosecution against him, Webster argued that filing the May 2020 information did not "institute[]" it under section 3282(a). And he argued that the January 2021 indictment could not relate back to the earlier May 2020 information. So he asked the district court to dismiss the January 2021 indictment as untimely.

The district court denied Webster's motion to dismiss. After reviewing the record *de novo*, the district court endorsed the magistrate judge's "well-reasoned analysis" and adopted his report. In that report, the magistrate judge concluded that filing an information was enough to institute a criminal action and toll the statute of limitations. And it concluded that the later indictment related back to the date of the timely filed information.

Webster pleaded guilty to one count of conspiring to commit access device fraud and one count of aggravated identity theft. The government agreed to dismiss the remaining counts. Webster's conditional plea agreement preserved his ability to appeal the denial of his motion to dismiss. The district court sentenced him to 24 months of imprisonment.

## II. STANDARDS OF REVIEW

We review the denial of a motion to dismiss an indictment for abuse of discretion, but we review *de novo* the interpretation and application of a statute of limitations. *United States v. Rojas*, 718 F.3d

1317, 1319 (11th Cir. 2013). "[C]riminal statutes of limitation are to be liberally interpreted in favor of repose." *United States v. Marion*, 404 U.S. 307, 322 n.14 (1971). "When doubt exists about the statute of limitations in a criminal case, the limitations period should be construed in favor of the defendant." *United States v. Gilbert*, 136 F.3d 1451, 1454 (11th Cir. 1998).

## III. DISCUSSION

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. CONST. amend. V. But "if indictment is waived, [a felony] may be prosecuted by information." *Branzburg v. Hayes*, 408 U.S. 665, 687 n.24 (1972) (internal quotation marks omitted). Because the offenses charged in Webster's information are felonies, Federal Rule of Criminal Procedure 7(b) provides that he could "be prosecuted by information [only] if [he]—in open court and after being advised of the nature of the charge and of [his] rights—waive[d] prosecution by indictment." FED. R. CRIM. P. 7(b).

Webster argues that to "institute[]" an information and toll the statute of limitations, section 3282(a) requires the government to file both an information *and* a waiver of indictment. But the text, structure, and history of section 3282(a) establish that filing an information without a waiver of indictment "institute[s]" the information and tolls the statute of limitations. Although the Fifth Amendment and Rule 7(b) protect Webster from prosecution

by information without a waiver of indictment, the statute of limitations does not serve this same function.

Our interpretation of the statute of limitations "begins and ends with the statutory text." *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1314 (11th Cir. 2019). Section 3282(a) provides that "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the *information is instituted* within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a) (emphasis added). The statute does not condition the institution of the information on the government's ability to proceed with a prosecution. Nor does the statute require—or otherwise mention—a Rule 7(b) waiver. And "[n]othing is to be added to what the text states or reasonably implies." *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 8, at 93 (2012).

Webster argues that the phrase "information is instituted" refers to "the institution of a prosecution." But the object of the verb "institute[]" in section 3282(a) is the noun "information." It is the information—not the prosecution—that must be "instituted." Although a prosecution cannot proceed without a Rule 7(b) waiver, an information is "instituted" when it is filed.

The meaning of the word "institute" has not changed since the original enactment in 1790. *See* Crimes Act of 1790, Pub. L. No. 1-9, § 32, 1 Stat. 112, 119. A popular and respected dictionary—which predated the original version of this statute by five years—defined "institute" as "to establish" and "to enact." *Institute*,

1 SAMUEL JOHNSON, DICTIONARY OF THE ENGLISH LANGUAGE (6th ed. 1785); *accord Institute,* NATHAN BAILEY, AN UNIVERSAL ETYMOLOGICAL ENGLISH DICTIONARY (21st ed. 1775) (defining "institute" as "to enact" and "to establish, or found"). That meaning remained fixed throughout the early American period. *See Institute*, 1 NOAH WEBSTER, AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE (1st ed. 1828) (defining "institute" as "[t]o establish," "to enact," "to originate and establish," and "[t]o begin; to commence; to set in operation"); *accord Instituted*, 1 BENJAMIN W. POPE, LEGAL DEFINITIONS (1919) ("A proceeding 'instituted[]' means one commenced."). When Congress amended the statute in 1948, after the ratification of the Fifth Amendment and the enactment of the Rule 7(b) waiver, the word "institute" meant "to *begin* an action." *Institute*, JAMES A. BALLENTINE, THE SELF-PRONOUNCING LAW DICTIONARY (2d ed. 1948) (emphasis added); *accord Institute*, 1 FUNK & WAGNALLS, NEW STANDARD DICTIONARY OF THE ENGLISH LANGUAGE (14th ed. 1943) (defining "institute" as "[t]o take the initial steps in or concerning; set in operation; begin; as, to *institute* an inquiry or a suit"). And the distinction between "institute" and "maintain" was clear: "[a]n action must be instituted before it can be maintained." BALLENTINE, *supra*, at 435.

That the statute distinguishes between a "prosecut[ion]" and the "institut[ion]" of an information further undermines Webster's argument. Section 3282(a) provides that "no person shall be *prosecuted . . .* unless . . . the *information is instituted* within five years." 18 U.S.C. § 3282(a) (emphasis added). The term "prosecute" has a broader meaning than the term "institute." A "prosecution"

includes both the institution *and* the continued pursuit of an action against a person. In the Founding era, "prosecution" meant "[t]he institution or commencement *and continuance* of a criminal suit." *Prosecution*, 2 NOAH WEBSTER, AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE (1st ed. 1828) (emphasis added); *accord Prosecute & Prosecution* , 2 JOHN ASH, THE NEW AND COMPLETE DICTIONARY OF THE ENGLISH LANGUAGE (1795) (defining "prosecute" as "[t]o pursue, to continue, to carry on; to proceed against by legal measures" and defining "prosecution" as "a process at law"); *Prosecution*, NATHAN BAILEY, AN UNIVERSAL ETYMOLOGICAL ENGLISH DICTIONARY (21st ed. 1775) (defining "prosecution" as "a Following, Pursuit, Continuance"). In 1947, the word "prosecution" meant "[t]he institution *and carrying on* of a suit or proceeding in a court of law or equity." *Prosecution*, WEBSTER'S NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE (2d ed. 1947) (emphasis added); *accord Prosecution*, 2 FUNK & WAGNALLS, NEW STANDARD DICTIONARY OF THE ENGLISH LANGUAGE (14th ed. 1943) (defining "prosecution" as "[t]he institution and continuance of a criminal proceeding."). Because "a material variation in terms suggests a variation in meaning," READING LAW, *supra*, § 25, at 170, we should give the different words in the statute—"prosecute" and "institute"—"different meanings." *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1089 (11th Cir. 2017) (en banc). Section 3282(a) does not equate the institution of an information with the maintenance of a prosecution. To the contrary, the statute contemplates that an "information is instituted" *before* the government proceeds with a "prosecut[ion]." 18 U.S.C. § 3282(a).

23-11526                Opinion of the Court                9

Because filing an information establishes it as an operative legal document and begins an action, an information is "instituted" when filed. Once filed, an information confers subject-matter jurisdiction on the district court. *See Young v. United States*, 354 F.2d 449, 452 (10th Cir. 1965); *cf. United States v. Leonard*, 4 F.4th 1134, 1142 (11th Cir. 2021) (holding that a defective indictment does not affect the subject-matter jurisdiction of the district court). It also provides the formal charges against the defendant, permits the defendant to file responsive motions and papers, and prompts case-management procedures to begin.

The government institutes or "begins an action" by filing an information even if it cannot later maintain a prosecution. This interpretation aligns with the well-established distinction between initiating an action and failing to prosecute it in other legal contexts. For example, Federal Rule of Civil Procedure 41 states that "[i]f the plaintiff fails to prosecute . . . , a defendant may move to dismiss the action." FED. R. CIV. P. 41(b). But a dismissal for failure to prosecute does not suggest that the plaintiff failed to file a complaint to commence the civil action. *See* FED. R. CIV. P. 3 ("A civil action is commenced by filing a complaint with the court."). It instead means that the plaintiff failed to maintain or pursue the action.

Webster relies on the right to prosecution by indictment under the Fifth Amendment and Federal Rule of Criminal Procedure 7(b) to assert that "institut[ing] an information" requires a waiver. But neither the Fifth Amendment nor Rule 7(b) existed when Congress enacted the original version of section 3282(a).

The first statute of limitations was enacted in 1790, and the language of the statute has largely remained unchanged over the past 235 years. *See* Crimes Act of 1790, Pub. L. No. 1-9, § 32, 1 Stat. 112, 119 ("[N]or shall any person be prosecuted, tried or punished for any offence, not capital, . . . unless the indictment or information for the same shall be found or instituted within two years from the time of committing the offence."). It was not until the following year, 1791, that the United States ratified the Fifth Amendment and established the individual right to be prosecuted by indictment "for a capital, or otherwise infamous crime." *See* U.S. CONST. amend. V. And the adoption of the procedure in Rule 7(b) for a waiver of an indictment became effective in 1946—over 150 years after the original adoption of section 3282(a). So the original Congress could not have required that an information comply with the Fifth Amendment or Rule 7(b) to be "instituted."

Nor has Congress changed the language of the statute of limitations to require a waiver since the adoption of Rule 7(b). Congress has amended section 3282(a) four times since the adoption of Rule 7(b) in 1946. *See* Act of June 25, 1948, Pub. L. No. 80-772, § 3282, 62 Stat. 683, 828 (removing the exception for crimes under slave trade laws); Act of Sept. 1, 1954, Pub. L. No. 83-769, § 10(a), 68 Stat. 1142, 1145 (changing the limitations period to five years); Act of Sept. 26, 1961, Pub. L. No. 87-299, § 12(b), 75 Stat. 640, 648 (changing the effective date of the amendment); PROTECT Act, Pub. L. No. 108-21, § 610, 117 Stat. 650, 692 (2003) (adding an exception for DNA indictments). At the time of each amendment, Congress knew that Rule 7(b) required defendants charged with

felony offenses to waive their right to prosecution by indictment before they could be prosecuted by information. But Congress did not alter the phrase "information is instituted" in section 3282(a) to give it a different meaning. Instead, Congress retained the language of the statute that predated the Fifth Amendment and the procedure for waiver.

Changes in a related provision, section 3288, also suggest that filing an information without a waiver tolls the statute of limitations. 18 U.S.C. § 3288. Section 3288 grants the government a six-month grace period to obtain a new indictment when a court dismisses a timely filed charging document outside the limitations period. In 1964, Congress amended section 3288 to apply to an information only if "the defendant waives in open court prosecution by indictment." *See* Act of Aug. 30, 1964, Pub. L. No. 88-520, 78 Stat. 699, 699. But, in 1988, Congress removed that language. Since 1988, the six-month extension to the statute of limitations has applied if an information is dismissed "for any reason" other than the government's "failure to *file*" the information within the limitations period or another reason that would bar prosecution. 18 U.S.C. § 3288 (emphasis added). This amendment suggests that, after 1988, Congress did not intend for a defendant's waiver of indictment to affect when the statute of limitations is tolled. And it reinforces the plain meaning of section 3282(a): that filing an information is enough to institute the action and toll the statute of limitations. If the government does not need a waiver of indictment to obtain a six-month extension to the statute of limitations, the government need not obtain a waiver to toll the limitations period.

Webster points to *Jaben v. United States* to argue that filing an information without a waiver cannot toll the statute of limitations. 381 U.S. 214 (1965). The statute at issue in *Jaben* provided that "[w]here a complaint is instituted *before a commissioner* of the United States within the [six-year] period . . . , the time shall be extended [for nine months]." *Id*. at 215–16 (emphasis added) (citation and internal quotation marks omitted). In *Jaben*, the government filed a complaint one day before the statute of limitations expired and obtained an indictment against the defendant outside the limitations period. *Id*. at 216. The government argued that the indictment was timely "if the complaint filed with the Commissioner was valid." *Id*. The Supreme Court rejected that argument. It reasoned that "to initiate the time extension," the complaint "must be sufficient to justify the next steps in the [criminal] process—those of notifying the defendant and bringing him before the Commissioner for a preliminary hearing." *Id*. at 220.

*Jaben* is inapposite. The Supreme Court there considered a different statute of limitations and a criminal complaint. Unlike section 3282(a), the statute in *Jaben* required that the complaint be "instituted *before a commissioner* of the United States." *Id*. at 215 (emphasis added) (citation and internal quotation marks omitted). The Court reasoned that the government's argument in *Jaben* would have "deprive[d] the institution of the complaint *before the Commissioner* of any independent meaning." *Id*. at 218 (emphasis added). And "[t]he argument ignore[d] the fact that the Commissioner's basic functions under the Rules are to make the judgment

that probable cause exists and to warn defendants of their rights." *Id.* Section 3282(a) does not contain these features.

Our sister circuits agree that an information is "instituted" under section 3282(a) when it is filed. The Seventh Circuit held in *United States v. Burdix-Dana* that "the filing of the information is sufficient to institute it" under section 3282(a). 149 F.3d 741, 743 (7th Cir. 1998). The court rejected the argument that "an information is not 'instituted' until the defendant has waived her right to an indictment." *Id.* at 742. It stated that "[t]here is nothing in the statutory language of [section 3282] that suggests a prosecution must be instituted before the expiration of the five year period." *Id.* at 743 (emphasis omitted). The Fourth Circuit came to the same conclusion in *United States v. Briscoe*, 101 F.4th 282, 292 (4th Cir. 2024). Relying on the plain meaning of "institute," the court reasoned that "[f]iling an information unambiguously fits th[e] definition of 'instituting' . . . because filing sets it on foot and brings it into existence." *Id.* at 292–93. And that interpretation comports with the statute's purpose: "'placing a defendant on notice of the charges brought against him before those charges are presumptively stale.'" *Id.* at 293 (quoting *United States v. Saussy*, 802 F.2d 849, 852 (6th Cir. 1986)).

Webster also asserts that his information could not toll the statute of limitations because he did not receive actual notice of it until after the limitations period expired. Although "[n]otice to the defendant is the central policy underlying the statute[] of limitation," *United States v. Italiano*, 894 F.2d 1280, 1283 (11th Cir. 1990),

we have not held that *actual* notice is required to toll the statute of limitations, *see United States v. Edwards*, 777 F.2d 644, 647 (11th Cir. 1985) (holding that a sealed indictment "is timely even though the defendant is not arrested and the indictment is not made public until after the end of the statutory limitations period"). The notice inquiry considers whether the charging document gives the defendant "adequate notice of the charges against [him]." *Hamling v. United States*, 418 U.S. 87, 117 (1974). And we "assum[e] . . . that the defendant has been placed on notice of the charges against him" if "the original indictment is still pending and was timely" and "the allegations and charges are substantially the same in the old and new indictments." *Italiano*, 894 F.2d at 1282–83. Because Webster's information was timely filed and "the allegations and charges are substantially the same" in both charging documents, Webster was "placed on notice of the charges against him." *Id.* at 1283.

The government need not obtain a waiver of indictment to "institute[]" an information under section 3282(a). To be sure, we "liberally" interpret criminal statutes of limitations "in favor of repose." *Marion*, 404 U.S. at 322 n.14. But, in so doing, we cannot compromise our "duty to refrain from reading a phrase into the statute when Congress has left it out." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993). We decline to read into section 3282(a) a requirement that the government file a waiver of indictment to institute an information. Nor will we condition the institution of an information on the defendant's receipt of actual notice. An information is instituted, and the statute of limitations is tolled for the

charges the information alleges, when it is filed with the district court.

Because the information was instituted in May 2020, which tolled the running of the limitations period, and was pending when the government obtained the January 2021 indictment against Webster, the indictment was timely. We decided in *United States v. Italiano* that a later indictment relates back to a timely and pending original indictment so long as it "does not broaden or substantially amend the original charges." 894 F.2d at 1282. We see no reason to depart from this rule of relation back when the original charging document is an information. Once filed, an information tolls the running of the limitations period under section 3282(a) as to the charges alleged. The limitations period runs again only if the information is dismissed. The limitations period stopped running when the government filed its May 2020 information, and that information was still pending when the government obtained the January 2021 indictment that charged Webster with the same offenses alleged in the information. So the indictment related back to the timely information.

## IV. CONCLUSION

We **AFFIRM** Webster's judgment of conviction and sentence.

23-11526                JORDAN, J., Concurring                1

JORDAN, Circuit Judge, concurring in the judgment.

I agree that the government's filing of a timely information, without having obtained a defendant's waiver of indictment, tolls the statute of limitations under 18 U.S.C. § 3282(a). I write separately to set out my somewhat different reasoning and to provide a cautionary note about the possible manipulation of the limitations period.

**I**

The relevant language of § 3282(a) is that "no person shall be prosecuted, tried, or punished for any offenses not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." The critical question is what it means for an information to be "instituted," and in my view there are reasonable arguments on both sides. On the one hand, "instituted" means only the initiation of a criminal case, and not the prosecution of it. On the other hand, an information unaccompanied by a waiver of indictment is without any effect, so the filing of an information—without more—is insufficient. *See United States v. Stewart*, 425 F. Supp. 2d 727, 730–35 (E.D. Va. 2006) (laying out the competing arguments). *Compare, e.g., United States v. Sanfilippo*, 572 F. Supp. 3d 1269, 1272–81 (S.D. Fla. 2021) (Altman, J.), and *United States v. Rosecan*, 528 F. Supp. 3d 1289, 1292–94 (S.D. Fla. 2021) (Ruiz, J.), *with, e.g., United States v. Gatz*, 704 F. Supp. 3d 1317, 1321–30 (S.D. Fla. 2023) (Middlebrooks, J.), and *United States v. Machado*, 2005 WL 2886213, at *2 (D. Mass. Nov. 3, 2005) (Zobel, J.).

2                    JORDAN, J., Concurring                    23-11526

Under governing Supreme Court precedent, it is a "'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary, contemporary, common meaning . . . at the time Congress enacted the statute.'" *Wisconsin Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018) (citation omitted). But a word's "meaning may change with time." *Holly Frontier Cheyenne Ref. LLC v. Renewable Fuels Ass'n*, 594 U.S. 382, 391 (2021). *Accord* James Harbeck, "11 Words Whose Meaning Completely Changed Over Time," *The Week* (Jan. 16, 2017) ("Whenever you encounter a word with a long history, it's safe to assume that the meaning has changed . . . or that it has stayed the same."). As a result, I believe that when Congress re-enacts a statute we should seek to ascertain the meaning of a term at the time of re-enactment. *See United States v. Barker,* No. 3:13-MC-15, 2014 WL 661603, at *12 (S.D. Ohio Feb. 19, 2014), ("While 'rule' may in 1831 have meant only a particular ruling as in 'rule nisi', that language was reenacted by Congress in 1948 when regulating the practice in federal courts by general rules adopted by the courts themselves was well-established. This Court is not limited to the meaning of the word at its original adoption in 1831 when it had acquired a different meaning by the time of its reenactment."), *report and recommendation adopted*, No. 3:13-CV-15, 2014 WL 1365951 (S.D. Ohio Apr. 7, 2014); William N. Eskridge, Jr., Interpreting Law: A Primer on How to Read Statutes and the Constitution 59 (2016) ("[T]he rule of law underpinning the ordinary meaning rule suggests that the dictionary meaning of any term should normally be informed by current as well as historic dictionaries."). Such an approach

23-11526                JORDAN, J., Concurring                3

recognizes the fluidity of language and promotes notice to the public while at the same time acknowledging Congress' institutional competence to update statutes first enacted long ago. After all, "[i]f statutes . . . are to give notice to citizens to whom they apply, that notice should apply to today's public as well." Ellen P. Aprill, *The Law of the Word: Dictionary Shopping in the Supreme Court*, 30 Ariz. St. L. J. 275, 333 (1998). *Cf. Negusie v. Holder*, 555 U.S. 511, 543 (2009) (Thomas, J., dissenting) (looking to the ordinary meaning of a statutory term at the time of initial enactment and the time of re-enactment).[1]

Congress initially enacted the predecessor to § 3282, with the same relevant "information is instituted" language, in 1790. A century and a half later, in 1948, Congress re-enacted § 3282 when it codified federal criminal statutes in Title 18 of the U.S. Code. *See* Act of June 25, 1948, Pub. L. No. 80-772, § 1, c. 645, 62 Stat. 828.

The word "instituted" in § 3282(a)—the provision which sets out the general statute of limitations for federal crimes—is used in its legal sense. *See Stansell v. Revolutionary Armed Forces of Colombia*, 45 F.4th 1340, 1351 (11th Cir. 2022). It therefore seems particularly relevant to ascertain the legal meaning of the word "institute" in 1948. One legal dictionary provided this definition: "To institute

---

[1] If Congress, following the Supreme Court's construction of statutory language, re-enacts that same language without change, the presumption is that it meant to "incorporate [the Court's] interpretation." *Bartenwerfer v. Buckley*, 598 U.S. 69, 80 (2023). But there has been no interpretation of the word "instituted" in § 3282(a) by the Supreme Court, so this presumption is inapplicable here.

an action is to begin an action.  The word differs from the word 'maintain.'  An action must be instituted before it can be maintained."  James A. Ballentine, The Self-Pronouncing Law Dictionary 435 (Second Students Edition 1948).  As far as I can tell, this definition was consistent with the scant caselaw on the matter at the time.  *See, e.g., Garner v. Mergel Co.*, 50 F. Supp. 794, 796 (W.D. Ky. 1943) ("[T]here is a well defined distinction between beginning and maintaining an action and that using the words in their ordinary significance 'maintain' carries a different meaning from 'institute' or 'begin', and implies that an action must be begun before it can be maintained[.]") (citing cases for this proposition); *Maloy v. Friedman*, 80 F. Supp. 290, 292 (N.D. Ohio 1948) (quoting the language from *Garner* with approval).

Also of note, though not determinative, is that the validity of an information generally does not appear to depend on its being filed along with a waiver of indictment.  "It is inconsequential whether the information is filed before or after the defendant waives indictment.  The fact that the information was filed first and the waiver was made later does not invalidate the pleading."  1 Andrew D. Leipold, Fed. Prac. & Proc. Crim. § 123 (5th ed. & August 2024 update).  *See also United States v. Cooper*, 956 F.2d 960, 963 (10th Cir. 1992) (same).

For me, the better view is that for purposes of § 3282(a) an information is instituted when it is filed, even if there is no contemporaneous waiver of indictment.  Such an information starts the criminal process even if the prosecution cannot proceed any

further (i.e., cannot be maintained) without the waiver. *Cf. Smallwood v. Gallardo*, 275 U.S. 56, 61 (1927) ("To maintain a suit is to uphold, continue on foot and keep from collapse a suit already begun.").

## II

The Supreme Court's decision in *Jaben v. United States*, 381 U.S. 214 (1965), makes this question of statutory interpretation a closer call. In *Jaben*, a federal statute, 26 U.S.C. § 6531, provided that the six-year statute of limitations for willfully attempting to avoid income taxes would be extended for up to nine months "[w]here a complaint is instituted before a commissioner of the United States within" the limitations period. *See id*. at 215–16. The question before the Court was whether a complaint which did not establish probable cause for this tax offense tolled the statute of limitations. The Court first held that such a deficient complaint did not toll the limitations period: "The better view of § 6531 is that the complaint, to initiate the time extension, must be adequate to begin effectively the criminal process prescribed by the Federal Criminal Rules. It must be sufficient to justify the next steps in the process—those of notifying the defendant and bringing him before the Commissioner for a preliminary hearing. To do so the complaint must satisfy the probable cause requirement of Rule 4." *Id*. at 220. The Court then concluded that the complaint filed against the defendant in that case was sufficient to establish probable cause. *See id*. at 221–25.

On one reading, *Jaben* might suggest that the mere filing of an accusatory document (like an information in a criminal case) does not automatically toll the statute of limitations under a statute like § 3282(a).  But I think *Jaben* is best understood as holding that a *substantively insufficient* charging document will not "institute" a proceeding that tolls the limitations period.  That is why the Supreme Court went on to address whether the complaint filed by the government in that case established probable cause.  At oral argument here the government appeared to concede that if an information does not sufficiently allege a violation of federal law—imagine a case in which the information alleges only that the defendant committed wire fraud because he wore a blue hat on a Sunday—then it is not "instituted" for purposes of § 3282(a).  *See* Audio of Oral Argument at 19:24 to 20:15.  But Mr. Webster does not claim that the information was substantively deficient.  His contention, instead, is that it was procedurally ineffective because it was not accompanied by a waiver of indictment.[2]

Some older former Fifth Circuit decisions addressing the predecessor to § 3282(a)—the former 18 U.S.C. § 582—have language suggesting that a substantively deficient indictment can toll

---

[2] As a general matter, "the degree of particularity required in the averments of an information is that which is necessary to enable the accused to understand the nature of the charge against him, intelligently to meet it, and to plead the result, whether conviction or acquittal, as his protection against another prosecution for the same offense." *Powers v. United States*, 128 F.2d 300, 301 (D.C. Cir. 1942).

23-11526                JORDAN, J., Concurring                7

the statute of limitations if it was timely filed. *See Bass v. United States*, 25 F.2d 294, 295 (5th Cir. 1928) ("The indictment falls short of stating an offense. It was error to overrule the demurrers. However, there would seem to be no bar to another indictment in this case[.]"); *Grimsley v. United States*, 50 F.2d 509, 510 (5th Cir. 1931) ("The present [defective] indictments having been found within the statutory period of limitations, new indictments would not be barred, even after the expiration of that period."). That language, however, is dicta because the cases did not involve a challenge to the government's attempt to bring a subsequent indictment after dismissal of the initial indictment. But even if that dicta were entitled to some weight, the Supreme Court's decision in *Jaben* has rejected the notion that a substantively deficient information can be considered "instituted" so as to toll the limitations period.[3]

### III

Our decision today leaves room for potential prosecutorial manipulation of the statute of limitations. If the timely filing of an information tolls the limitations period even without a waiver of indictment, the government can file an information just before

---

[3] Even if a timely-filed but substantively deficient information (or indictment) could theoretically toll the statute of limitations, the government cannot later file an indictment that broadens the charge or charges in the information. *See generally United States v. Ratcliff*, 245 F.3d 1246, 1253 (11th Cir. 2001) ("A superseding indictment brought after the statute of limitations has expired is valid so long as the original indictment is still pending and was timely and the superseding indictment does not broaden or substantially amend the original charges.").

that period expires, not provide the defendant any notice, and then wait years—there is, after all, no time limit under § 3282(a) for statutory tolling—to obtain an indictment. And because the filing of the information tolls the statute of limitations, the indictment will be timely even if it comes many years after the information and after what would have been the end of the normal limitations period. *See, e.g., Gatz*, 704 F. Supp. 3d at 1321, 1332 (government obtained and filed an indictment against the defendant almost three years after filing an information (without waiver of indictment) which purportedly tolled the statute of limitations, resulting in the defendant being indicted eight years after the charged conduct). Needless to say, any such conduct by the government could be considered manipulative and troubling for the reasons articulated by the district court in *Gatz*. *See also United States v. Burdix-Dana*, 149 F.3d 741, 743 (7th Cir. 1998) (acknowledging that its holding would "allow[ ] prosecutors to file an information, wait indefinitely, then present the matter to a grand jury well beyond the statute of limitations but within six months of the dismissal of the information"). Such conduct would cut against some of the purposes of a limitations period—providing a "policy of repose" and fostering "certainty about . . . a defendant's potential liabilities." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 14 (2014) (citation and internal quotation marks omitted).

A federal statute, 18 U.S.C. § 3288, provides in relevant part that "[w]henever an indictment or information charging a felony is dismissed for any reason after the period prescribed by the applicable statute of limitations has expired, a new indictment may be

23-11526                JORDAN, J., Concurring                    9

returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment or information, or, in the event of an appeal, within 60 days of the date the dismissal of the indictment or information becomes final, or, if no regular grand jury is in session in the appropriate jurisdiction when the indictment or information is dismissed, within six calendar months of the date when the next regular grand jury is convened, which new indictment shall not be barred by any statute of limitations." Another provision has similar language for dismissals before the end of the limitations period. *See* 18 U.S.C. § 3289 ("Whenever an indictment or information charging a felony is dismissed for any reason before the period prescribed by the applicable statute of limitations has expired, and such period will expire within six calendar months of the date of the dismissal of the indictment or information, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the expiration of the applicable statute of limitations, or, in the event of an appeal, within 60 days of the date the dismissal of the indictment or information becomes final, or, if no regular grand jury is in session in the appropriate jurisdiction at the expiration of the applicable statute of limitations, within six calendar months of the date when the next regular grand jury is convened, which new indictment shall not be barred by any statute of limitations.").

On the surface, it might seem that §§ 3288 and 3289 guard against abuse of the information-without-waiver-of-indictment mechanism by limiting to six months the time period in which the government can obtain a later indictment. *See* Nicole D. Mariani,

10                    JORDAN, J., Concurring                    23-11526

*Hiding in Plain Language: A Solution to the Pandemic Riddle of a Suspended Grand Jury, an Expiring Statute of Limitations, and the Fifth Amendment,* 30 U. Miami L. Rev. 938 (2022) ("Thus, so long as an information is filed with the court within the five-year limitations period, prosecutors can dismiss that information if the defendant does not waive prosecution by indictment. Prosecutors then have six months from the date that the next grand jury meets in that judicial district to indict the defendant on the same charges. This permits prosecutors to timely indict defendants even when grand juries are suspended for months before and after the statute of limitations on their criminal conduct expires.") (footnotes omitted). That, however, is not necessarily so.

First, the additional six-month period set out in § 3288 begins to run from the dismissal of the information, and if the information is not dismissed, the statute ("[w]henever an indictment or information charging a felony is dismissed") never comes into play. *See United States v. Friedman,* 649 F.2d 199, 203 (3d Cir. 1981); *United States v. Crysopt Corp.,* 781 F. Supp. 375, 377 (D. Md. 1991); *United States v. Moskowitz,* 356 F. Supp. 331, 332 (E.D.N.Y. 1972). The same goes for § 3289, which has the same dismissal trigger as § 3288. So the government can avoid the six-month limitation in §§ 3288 and 3289 by simply not moving to dismiss the information.[4]

---

[4] A defendant can, of course, move for dismissal of an information if he has not waived indictment. *See Burdix-Dana,* 149 F.3d at 743. But a defendant can only seek dismissal when he knows that an information has been filed against him. If the government does not provide notice of an information to the

Maybe the subsequent filing of an indictment has the same practical effect as dismissal of the information it replaces. *See United States v. McKay*, 30 F.3d 1418, 1420 (11th Cir. 1994) ("Filing a superseding indictment has the same effect as dismissing an original indictment and filing a new indictment[.]"). But that is not at all clear. *See United States v. Stricklin*, 591 F.2d 1112, 1115 n.1 (5th Cir. 1979) (stating that "two indictments may be outstanding at the same time for the same offense if jeopardy hasn't attached to the first indictment," and that the "government may select one of them with which to proceed to trial"). In any event, the practical dismissal of the information only takes place when the indictment is filed, and therefore the six-month period set out in §§ 3288 and 3289 never really begins to run.

Second, even if the government moves for dismissal of the information, it controls the timing of that dismissal, for it decides when to file a motion asking the court to dismiss. *See* Fed. R. Crim. P. 48(a) ("The government may, with leave of court, dismiss an indictment, information, or complaint."). And if the government behaves like a rational actor—one which does not want to lose a case on statute of limitations grounds—it will only move for dismissal when it has an indictment in hand that it can readily and immediately file. So if it takes the government nine more years to obtain an indictment, it will wait those nine years to seek dismissal of the

---

defendant—the scenario I am concerned with—he will not know that he has the option of seeking dismissal.

12                    JORDAN, J., Concurring                    23-11526

information.  And nothing in §§ 3288 and 3289 can prevent the government from proceeding in this fashion and tolling the statute of limitations for an indefinite period of time.[5]

## IV

With some misgivings, I concur in the judgment.  But to prevent any future manipulation of the statute of limitations by the government, and to avoid the possible problematic scenarios that might result from our decision, I suggest that Congress amend §§ 3288 and 3289 to provide a limited period of time in which the government can obtain an indictment following the filing of a timely information that is not accompanied by a waiver of indictment.

---

[5] Under Rule 48(b)(3) a district court "may dismiss" an indictment, information, or complaint if there is "unnecessary delay" in "bringing a defendant to trial," but we have held that a "timely indictment" under the statute of limitations "is not 'unnecessary delay' under Rule 48(b)." *United States v. Beck*, 471 F.2d 31, 32 (5th Cir. 1973) (citation and internal quotation marks omitted).  As a result, Rule 48(b)(3) would not seem to provide a remedy for the possible manipulation of the statute of limitations described in the text.